IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JANTZ H. KINZER and JOHN W. CHERRY,<br><br>         Plaintiffs,<br><br>v.<br><br>REMINGTON ARMS COMPANY, INC. and SPORTING GOODS PROPERTIES, INC.,<br><br>         Defendants. | Case No. _____<br><br>(Case Pending in the Western District of Oklahoma, Civil Action No. 5:09-cv-01242)<br><br>**BRIEF IN SUPPORT OF MOTION TO QUASH SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION** |

Thomas L. Millner ("Mr. Millner") hereby respectfully submits this Brief in Support of his Motion to Quash Subpoena to Testify at a Deposition in a Civil Action. Mr. Millner states that, in light of a prior deposition given on the same issues necessarily involved in the above-captioned litigation, requiring him to be re-deposed on the same issues when he has no new or additional knowledge and while he is carrying out significant and time-consuming duties as Chief Executive Officer of Cabela's, Inc. ("Cabela's") would subject him to undue burden. Accordingly, Mr. Millner respectfully requests that the Court quash the subpoena issued by Plaintiffs in the above-referenced matter.

**BACKGROUND INFORMATION**

1.  On February 9, 2011, counsel for Plaintiffs issued a subpoena to Mr. Thomas Millner, c/o Cabelas, Inc. in Sidney, Nebraska. [Index of Evidence, Ex. 1.A].

2.  The subpoena commands Mr. Millner to appear on March 29, 2001 at 9:30 a.m. at the Holiday Inn in Sidney, Nebraska, to provide deposition testimony in the above-referenced action. [*Id*].

3. The above-referenced action (the "Kinzer Action") is putative national class action pending in the United States District Court for the Western District of Oklahoma and involves claims concerning Remington Model 700 bolt action rifles and the design of Walker fire control systems. [Index of Evidence, Ex. 1.D].

4. On July 14, 2005, an action was filed in the United States District Court for the Northern District of Texas, Dallas Division, captioned *Trevor Williams v. Remington Arms Co., Inc.* Civil Action No. 3:05-CV-1383-D (the "Williams Action"). [Index of Evidence, Ex. 1 at ¶ 6; Ex. 1.B].

5. At issue in the Williams Action was the design of Walker fire control system. [Index of Evidence, Ex. 1.B].

6. Mr. Millner began working at Remington in June 1994 as President of the company. [Index of Evidence, Ex. 2 at ¶ 7]. In approximately 2001, Mr. Millner became Chief Executive Officer and President of Remington. [*Id*.]. In 2007, his title changed to Chief Executive Officer. [*Id*.].

7. In that capacity, Mr. Millner gave sworn deposition testimony on June 14, 2007 in the Williams Action. [Index of Evidence, Ex. 1.C; Ex. 2 at ¶ 8].

8. Mr. Millner's deposition commenced at 9:21 a.m. and concluded at 5:26 p.m. . [Index of Evidence Ex. 1.C]. In addition to being recorded stenographically, the deposition was videotaped. . [Index of Evidence Ex. 1.C, Ex. 2 at ¶ 8].

9. Representing plaintiffs in the Williams Action was Mr. Jeffrey W. Hightower, Esq. of the law firm Barber Hightower LLP and Mr. Timothy Monsees, Esq. of the law firm Monsees Miller Mayer Presley & Amick, PC. [Index of Evidence Ex. 1.C].

10. As is evident from the deposition transcript, Mr. Millner gave deposition testimony on his role as CEO and President of Remington and his knowledge regarding, among other things, Remington Model 700 and Model 710 bolt action rifles, the Walker fire control system, testing on the fire control system on Model 700 and 710 bolt action rifles, and Remington's development and adoption of the X-Mark Pro fire control system for Model 700 rifles. [Index of Evidence 1.C].

11. Mr. Millner left Remington in March 2009 to become CEO of Cabela's. [Index of Evidence, Ex. 2 at ¶ 9].

12. As CEO of Cabela's, Mr. Millner's job responsibilities include oversight of all operations of Cabela's and its subsidiaries, including World's Foremost Bank, a large credit card banking operation chartered by Cabela's. This includes the day-to-day supervision of operations through consultation with and direction over the entire Cabela's management team. In addition, his job responsibilities entail extensive travel on a global and national basis to oversee Cabela's operations in Canada and throughout the United States. [Index of Evidence, Ex. 2 at ¶ 4]. Mr. Millner frequently works at least eighty hours a week. [Index of Evidence, Ex. 2 at ¶ 5].

13. After Mr. Millner left Remington, the Kinzer Action was filed in the United States District Court for the Western District of Oklahoma captioned *Jantz H. Kinzer v. John W. Cherry v. Remington Arms Co. Inc. and Sporting Goods Properties, Inc.* Case No. 5:09-cv-01242-R. [Index of Evidence, Ex. 1 at ¶ 10, Ex. 1.D].

14. Timothy W. Monsees, Esq. of the Monsees Miller Mayer Presley & Amcik PC law firm, is one of counsel to Plaintiffs in the Kinzer Action. This attorney and law firm represented the plaintiff in the Williams Action. [Index of Evidence, Ex. 1 at ¶ 11].

15. As is evident from the Amended Complaint in the Kinzer Action filed on January 19, 2010, the matters at issue in the Kinzer Action relate to Remington Model 700 bolt action rifles and the design of the Walker fire control system. [Index of Evidence, Ex. 1.D].

16. The Kinzer Action is in relatively early stages. The Scheduling Order currently in place requires discovery on class certification to be completed by June 1, 2010 (sic)[1] and requires Plaintiff to file a motion for class certification by July 1, 2011. [Index of Evidence, Ex. 1.E]. Significantly, the Scheduling Order currently in place does not provide for any discovery beyond class certification discovery. [*Id.*].

17. Remington began phasing out the Walker fire control system on the Model 700 bolt action rifle in 2006 and by April 2007, the Walker fire control system was only produced in limited numbers and in certain tactical and Remington Custom Shop rifles. [Index of Evidence, Ex. 3 at ¶ 3].

18. Mr. Millner provided all information in his possession relating to Remington Model 700s bolt action rifles and the Walker fire control system at his 2007 deposition. [Index of Evidence, Ex. 2 at ¶ 10]. He has not obtained any new information relating to the Remington Model 700s bolt action rifles or the fire control systems on these rifles since the 2007 deposition. [*Id.*]. All knowledge he has regarding these issues he also had at the time his deposition was taken in the Williams Action. [*Id.*].

19. Moreover, Mr. Millner has no knowledge not possessed by other executives of Remington relating to the class certification motion that must be filed in the Kinzer Action by July 1, 2011.

20. Counsel for Remington in the Kinzer Action has offered to stipulate that Plaintiffs in the Kinzer Action may use Mr. Millner's 2007 testimony from the Williams action, taken by

the same law firm on the same matters at issue, as if taken in the Kinzer Action. [Index of Evidence, Ex. 1.F].

21.     Counsel for Plaintiffs in the Kinzer Action have refused to agree to this and instead issued a subpoena during the period of discovery reserved for class certification to take the deposition of Mr. Millner on substantive matters on which they have previously deposed Mr. Millner.

## ARGUMENT

**I.      Standard of Review**

Rule 45 of the Federal Rules of Civil Procedure requires a court, upon timely motion, to quash or modify a subpoena that, among other things, subjects a person to undue burden. Fed. R. Civ. P. 45(c)(3)(A)(iv). The determination of whether a subpoena subjects a witness to undue burden is committed to the sound discretion of the trial court and depends upon such factors as relevance and the burden imposed. *In re Blackstone Partners, L.P.*, 2005 WL 1560505, *2 (S.D.N.Y. July 1, 2005) *citing Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 49 (S.D.N.Y.1996) The status of a witness as a non-party to the underlying litigation entitles the witness to consideration regarding expense and inconvenience. *Id.*

Furthermore, a court may quash or modify a subpoena if it seeks discovery that is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive ... [ ]." Fed.R.Civ.P. 26(b)(2); *Traveler v. CSX Transportation, Inc.*, 2006 WL 2375480, *1 (N.D.Ind. August 16, 2006). Courts may also place limits on discovery where the "burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the proposed discovery in

---

[1] The date should read "June 1, 2011."

resolving the issues." Fed.R.Civ.P. 26(b)(2). Moreover, the Federal Rules of Civil Procedure should be "construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

## II. Requiring Mr. Millner to Comply with the Subpoena Would Subject him to Undue Burden.

Requiring Mr. Millner, a non-party to this action, to comply with the subpoena would subject him to undue and unnecessary burden. Mr. Millner is currently the CEO of Cabela's. As the chief executive of a large corporation that conducts business throughout the world, Mr. Millner has a heavy and burdensome work schedule. Mr. Millner is responsible for overseeing all operations of Cabela's and its subsidiaries. This includes the day-to-day supervision of operations through consultation with and direction over the entire Cabela's management team. [Statement of Facts ("SOF") at ¶ 12]. In addition, his job responsibilities entail extensive travel on a global and national basis to oversee Cabela's operations in Canada and Hong Kong and throughout the United States. [SOF at ¶ 12]. He frequently works at least eighty hours per week. [SOF at ¶ 12].

While there is "no per se rule barring depositions of top corporate executives," "courts frequently restrict efforts to depose senior executives where the party seeking the deposition can obtain the same information through a less intrusive means, or where the party has not established that the executive has some unique knowledge pertinent to the issues in the case." *Cardenas v. Prudential Insurance Co. of America,* 2003 WL 21293757, *1 (D.Minn. May 16, 2003) (citing *Salter v. Upjohn,* 593 F.2d 649, 651 (5th Cir.1979)). The likelihood of harassment and business disruption are factors to be considered in deciding whether to allow discovery of corporate executives. *Consolidated Rail Corp. v. Primary Industries Corp.,* 1993 WL 364471, at *1 (S.D.N.Y. Sept. 10, 1993)

In this particular matter, not only would requiring Mr. Millner to comply with the subpoena place an undue burden on him in light of his current job responsibilities at Cabela's, a non-party to the litigation, it would place a completely unnecessary burden on Mr. Millner because the testimony sought is cumulative and duplicative. Indeed, Plaintiffs can easily and inexpensively obtain the sought after information through less intrusive means – (1) Mr. Millner's prior deposition testimony on the very matters at issue in the above-captioned litigation, and (2) depositions of current Remington employees.

Mr. Millner was formerly President and CEO of Remington. [SOF at ¶ 6]. In that capacity, he was deposed in the Williams Action in June 2007 and was questioned on his knowledge of the Remington Model 700 bolt action rifles, the Walker fire control system and other fire control systems, and matters pertaining to these issues. [SOF at ¶¶ 7 - 10]. The deposition was attended by counsel from the same law firm that is representing Plaintiffs in the Kinzer Action. [SOF at ¶¶ 9 & 14]. Mr. Millner left Remington in March 2009. [SOF at ¶ 11]. Mr. Millner provided all information in his possession relating to Remington Model 700s bolt action rifles and the Walker fire control system at his 2007 deposition. [SOF at ¶ 18]. He has not obtained any new information relating to the Remington Model 700s bolt action rifles or the fire control systems on these rifles since the 2007 deposition. [*Id.*]. All knowledge he has regarding these issues he also had at the time his deposition was taken in the Williams Action. [*Id.*].

Remington has offered that Mr. Millner's deposition testimony taken in the Williams Action can be used in the Kinzer Action as if taken therein. [SOF at ¶ 20]. It is well established that, as a general rule, "depositions taken in a prior action are admissible in a subsequent action if there is substantial identity of issues and parties in the two actions." *Rule v. Int'l Ass'n of*

*Bridge, Structural & Ornamental Ironworkers, Local Union No. 396 et al.*, 568 F.2d 558, 568 (8th Cir. 1977). A party to the second suit "need not have been a party to the prior suit if the interest of the objecting party in the prior suit was calculated to induce as thorough a cross-examination as the interest of the present opponent." *Id.* at 569. To force Mr. Millner to appear for a deposition to give duplicative testimony on an issue he has already been deposed on and on which he has no new knowledge would subject Mr. Millner to an undue burden and would result in unreasonably cumulative and duplicative discovery. Mr. Millner would have to spend substantive time preparing for the deposition and take time out of his busy schedule to devote to a second deposition by the same law firm on issues he has already fully addressed. Plaintiffs can obtain the same sworn information by utilizing the prior deposition testimony of Mr. Millner.

Mr. Millner does not possess any new relevant information that was not available at the time of the deposition in the Williams Action [SOF at ¶ 18]. No prejudice would result to Plaintiffs by taking this course of action as the underlying premise of both the Williams Action and the Kinzer Action is the allegedly defective design of the Walker fire control system which is precisely what Mr. Millner was questioned about in the Williams Action. Moreover, counsel for plaintiff in the Williams Action was the same counsel for Plaintiffs in the Kinzer Action. Accordingly, the least intrusive, least burdensome, and least expensive means of obtaining the testimony sought is for Plaintiffs to agree to use Mr. Millner's testimony in the Williams Action as though taken in the Kinzer Action.

In light of the above, and Mr. Millner's schedule as CEO of Cabela's, Mr. Millner respectfully submits that the subpoena subjects him to an undue burden and should be quashed.

### III.   Plaintiffs' Request for a Substantive Deposition is Premature.

While Mr. Millner respectfully submits that taking his deposition in the Kinzer action imposes an undue burden and, accordingly, the subpoena should be quashed, Mr. Millner also submits that the subpoena is premature. The Scheduling Order in the Kinzer action does not provide for discovery other than that related to class certification issues. [SOF at ¶ 16]. A party seeking class certification bears the burden of satisfying the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a) of the Federal Rules of Civil Procedure. *True v. Conagra Foods, Inc.* 2011 WL 176037, *2 - 3 (W.D.Mo. Jan. 4, 2011). That party must then demonstrate that their claims fall under one of the categories listed in Rule 23(b). *Id*. Mr. Millner, as past President and CEO of Remington, has no information that would assist Plaintiffs' in their motion for class certification that could not be obtained from current employees of Remington. Accordingly, the subpoena for substantive testimony on the merits directed at Mr. Millner is premature and should be quashed.

## CONCLUSION

For the foregoing reasons, Mr. Millner respectfully requests that this Court grant his Motion to Quash Subpoena.

Respectfully submitted this 25th day of February, 2011.

s/ Victoria H. Buter
Thomas H. Dahlk (#15371)
Victoria H. Buter (#23841)
HUSCH BLACKWELL LLP
1620 Dodge Street, Suite 2100
Omaha, NE 68102
Telephone: (402) 964-5000
Facsimile: (402) 964-5050
tom.dahlk@huschblackwell.com
vicki.buter@huchblackwell.com

ATTORNEYS FOR MR. THOMAS MILLNER

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 25th day of February, 2011, I electronically filed the above using the CM/ECF system which sent notification of such filing to the following:

| | |
|---|---|
| Robert H. Alexander, Jr. | alexattys@productlaw.com |
| Robert W. Ivy | rwi@productlaw.com |
| John J. Love | jjl@productlaw.com |
| Max C. Tuepker | mtuepker@swbell.net |
| Timothy W. Monsees | tmonsees@mmmpalaw.com |
| Richard A. Ramler | richardramler@aol.com |
| Steven J. Adams | sadams@fellerssnider.com |
| Dale G. Wills | dwills@smbtrials.com |
| Anne E. Cohen | aecohen@debevoise.com |

    I further certify that I sent a copy of the foregoing via U.S. Mail, postage pre-paid, to the following:

Max C. Tuepker
Max C. Tuepker PC
204 N. Robinson, 25th Floor
Oklahoma City, OK 73102

Richard A. Ramler
RAMLER LAW OFFICES PC
202 W. Madison Ave.
Belgrade, MT 59714

Steven J. Adams
Fellers Snider Blankenship Bailey & Tippens
321 S. Boston Ave., Suite 800
Tulsa, OK 74103-3318

Timothy W. Monsees
Monsees Miller Mayer Presley & Amick PC
4717 Grand Ave., Suite 820
Kansas City, MO 64112

John J. Love
Robert W. Ivy
Robert H. Alexander, Jr.
Law Office of Robert H. Alexander, Jr. PC
P.O. Box 868
120 N. Robinson Avenue, 24th Fl.
Oklahoma City, OK 73101-0868

Dale G. Wills
Swanson Martin & Bell
330 N. Wabash Ave., Suite 3300
Chicago, IL 606011

Anne E. Cohen
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022

       s/ Victoria H. Buter