# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JANTZ H. KINZER and | ) | |
| JOHN W. CHERRY, | ) | |
| | ) | |
| Plaintiffs, | ) | 8:11CV75 |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| REMINGTON ARMS COMPANY, INC. and | ) | |
| SPORTING GOODS PROPERTIES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on non-party Thomas L. Millner's Motion to Quash Subpoena to Testify at a Deposition in a Civil Action (Filing No. 1) regarding the subpoena served upon him by the plaintiffs in connection with a lawsuit pending in the Western District of Oklahoma. Millner filed a brief (Filing No. 2) and an index of evidence (Filing No. 3) in support of the motion. The plaintiffs filed a brief (Filing No. 17) and an index of evidence (Filing No. 18) in opposition to the motion. Millner filed a brief (Filing No. 24) in reply. The defendants did not participate in briefing the motion to quash.

## BACKGROUND

Millner's motion, filed in the United States District Court for the District of Nebraska, seeks to quash his deposition sought by the plaintiffs related to their lawsuit filed in the United States District Court for the Western District of Oklahoma, Civil Action No. 5:09CV1242 (Kinzer Action). **See** Filing No. 2 - Brief p. 2-3. The Kinzer Action is a putative national class action involving claims concerning Remington Model 700 bolt action rifles and the design of Walker fire control systems. **See** Filing No. 3 - Ex. 1(D) Kinzer Action Amended Complaint. The plaintiffs in the Kinzer Action seek certification of a national class pursuant to theories of both express and implied warranties. *Id.*; **see also** Filing No. 17 - Response p. 4-5. In the Kinzer Action, the plaintiffs have until July 1, 2011, to file a motion for class certification. **See** Filing No. 3 - Ex. 1(E) Kinzer Action Scheduling Order. The Scheduling Order set a deadline for discovery related to class certification, but does not explicitly limit or provide for general discovery. *Id.* On February 9, 2011, the Kinzer Action plaintiffs issued a subpoena to Millner commanding him to appear for a

deposition on March 29, 2011, at 9:30 a.m. at the Holiday Inn located in Sidney, Nebraska. **See** Filing No. 3 - Ex. 1(A) Subpoena.  Millner has not previously been deposed in the Kinzer Action, however he has been deposed in a related action, captioned ***Trevor Williams v. Remington Arms Co., Inc.***, Civil Action No. 3:05CV1383 (Williams Action). **See** Filing No. 3 - Ex. 2 Millner Aff. ¶ 8.

The Williams Action was filed on July 14, 2005, in the United States District Court for the Northern District of Texas.  ***Id.*** Ex. 1 Wills Aff. ¶ 6 and Ex. 1(B) Williams Action Amended Complaint.  At issue in the Williams Action was the design of the Walker fire control system.  **See** Filing No. 2 - Brief p. 2; Filing No. 3 - Ex. 1(B) Williams Action Amended Complaint.  On June 14, 2007, Millner gave sworn deposition testimony.  **See** Filing No. 3 - Ex. C Millner Depo.  The deposition, which was recorded stenographically and videotaped, commenced at 9:21 a.m. and concluded at 5:26 p.m.  ***Id.***  Representing the plaintiffs in the Williams Action was Jeffrey W. Hightower of the law firm Barber Hightower LLP and Timothy Monsees of the law firm Monsees Miller Mayer Presley & Amick, PC.  ***Id.***  The record reflects Mr. Monsees also represents the plaintiffs in the Kinzer Action.

Millner provided the deposition testimony due to his association with Remington Arms Company, Inc. (Remington).  Millner began working at Remington in June 1994 as president of the company.  **See** Filing No. 3 - Ex. 2 Millner Aff. ¶ 7.  In approximately 2001, Mr. Millner became president and Chief Executive Officer (CEO).  ***Id.***  In 2007, his title changed to CEO.  ***Id.***  In the June 14, 2007, deposition, Millner provided testimony about his role at Remington and "his knowledge regarding, among other things, Remington Model 700 and Model 710 bolt action rifles, the Walker fire control system, testing on the fire control system on Model 700 and 710 bolt action rifles, and Remington's development and adoption of the X-Mark Pro fire control system for Model 700 rifles." **See** Filing No. 2 - Brief p. 3 (**citing generally** Filing No. 3 - Ex. C Millner Depo.).

Millner left Remington in March 2009 to pursue a career as CEO of Cabela's, Inc. **See** Filing No. 3 - Ex. 2 Millner Aff. ¶¶ 4, 9.  As CEO of Cabela's, Millner's job responsibilities include oversight of all operations of Cabela's and its subsidiaries, including World's Foremost Bank, a large credit card banking operation chartered by Cabela's.

*Id.* ¶ 4.   Millner is responsible for the day-to-day supervision of operations through consultation with and direction over the entire Cabela's management team.  *Id.*  In addition, his job responsibilities entail extensive travel on a national and global basis to oversee Cabela's operations and in twenty-two states and in Canada.  *Id.*  In his affidavit Millner attests, "I typically work at least eighty (80) hours per week."  *Id.* ¶ 5.

The affidavit further states:

> 10.   I provided all information in my possession relating to the Remington Model 700s bolt action rifles and the Walker fire control system at the 2007 deposition.  I have not obtained any new information relating to the Remington Model 700s bolt action rifles or the fire control systems on these rifles since the 2007 deposition.  All knowledge I have regarding these issues I also had at the time my deposition was taken in the Williams Action.
>
> 11.   I have not worked in the firearm manufacturing industry since I left Remington.

*Id.* ¶¶ 10-11.

Millner notes in his brief that he "has no knowledge not possessed by other executives of Remington relating to the class certification motion."  **See** Filing No. 2 - Brief p. 4.  Additionally, "Remington began phasing out the Walker fire control system on the Model 700 bolt action rifle in 2006 and by April 2007, the Walker fire control system was only produced in limited numbers and in certain tactical and Remington Custom Shop rifles."  *Id.* (**citing** Filing No. 3 - Ex. 3 Watkins Aff. ¶ 3).  Finally, Millner notes counsel for Remington in the Kinzer Action offered to stipulate that the plaintiffs in the Kinzer Action may use Millner's 2007 testimony from the Williams Action, as if taken in the Kinzer Action.  **See** Filing No. 2 - Brief p. 4-5.

## ANALYSIS

Parties may discover any relevant, unprivileged information that is admissible at trial or is reasonably calculated to lead to admissible evidence.  **See** Fed. R. Civ. P. 26(b)(1).  Once the requesting party meets the threshold relevance burden, generally "[a]ll discovery requests are a burden on the party who must respond thereto.  Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the

entity answering or producing the documents to bear that burden." *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 684-85 (D. Kan. 1991) (citation omitted).  Therefore, the party opposing discovery has the burden of showing its objections are valid by providing specific explanations or factual support as to how such discovery is improper.  *St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.*, 198 F.R.D. 508, 511-12 (N.D. Iowa 2000) (objecting party has the burden to substantiate its objections). The plaintiffs have met their burden of showing the requested deposition is relevant to the plaintiffs' claims and Millner does not dispute the relevance of the requested testimony.

Depositions are governed by Federal Rule of Civil Procedure 30.  Pursuant to Rule 30:  "A party may, by oral questions, depose any person . . . .  The deponent's attendance may be compelled by subpoena under Rule 45."  Fed. R. Civ. P. 30(a)(1).  Rule 45, which allows for depositions of non-parties, imposes limitations on a party's demand for relevant testimony.  Specifically,

> A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply.

Fed. R. Civ. P. 45(c)(1).

The Rule also provides a mechanism for a subpoenaed person to challenge the requirements of a subpoena as follows:  "On timely motion, the issuing court must quash or modify a subpoena that: . . .  (iv) subjects a person to undue burden."  Fed. R. Civ. P. 45(c)(3)(A).  Rule 45(c)(3) "tracks the provisions of Rule 26(c)" and is meant to protect a witness from a misuse of subpoena power.  Fed. R. Civ. P. 45(c)(3) advisory committee's note (1991 amend.).  Accordingly,

> The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
> (A)  forbidding the disclosure or discovery;
> (B)  specifying terms, including time and place, for the disclosure or discovery;

> (C)    prescribing a discovery method other than the one selected by the party seeking discovery; [and]
>
> (D)    forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; . . . .

Fed. R. Civ. P. 26(c).

In order to make the requisite showing of good cause, the moving party must make "a particular and specific demonstration of fact, as distinguished from stereotype and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981); **see *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 926 (8th Cir. 1999).** Thus, for good cause to exist, the parties seeking protection must show that specific prejudice or harm will result if no protection is granted. **See *Frideres v. Schiltz*, 150 F.R.D. 153, 156 (S.D. Iowa 1993).** Such determination must also include a consideration of the relative hardship to the non-moving party should the discovery be denied. **See *General Dynamics Corp. v. Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973)** (**citing *United States v. Kordel*, 397 U.S. 1, 4-5 (1970)**). The court has discretion to limit or broaden the scope of discovery, if it has a good reason to do so. *Credit Lyonnais v. SGC Int'l, Inc.*, 160 F.3d 428, 431 (8th Cir. 1998). Under the rules for any discovery in a civil matter, and for depositions, in particular, the court may further limit discovery if it determines:

> (i)     the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii)    the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii)   the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C); **see also** Fed. R. Civ. P. 30(a)(2) and (d)(2).

Millner argues, that due to his work schedule, having him attend a deposition for the Kinzer Action will subject him to a heavy, unnecessary, and undue burden. **See** Filing No.

2 - Brief p. 6.  Millner asserts that because he is a "top corporate executive," the time he would take out of his work to prepare for and attend the deposition would disrupt the business of his employer, a non-party.  *Id.* at 6-7.  Millner contends the deposition is unnecessary because of the extensive deposition undertaken in the Williams Action, during which he answered questions about the Model 700 rifle, including the fire control mechanism.  *Id.* at 7; Filing No. 24 - Reply p. 3-4.  Millner argues the underlying premise for each of the two actions is the same–the alleged design defect in the Walker fire control system, regardless of the legal theories plead.  **See** Filing No. 24 - Reply p. 4-6.  Millner suggests the plaintiffs may obtain the information they need through less intrusive means such as utilizing the Williams Action deposition and deposing current Remington employees.  **See** Filing No. 2 - Brief p. 7.  Moreover, Millner denies he has any new relevant testimony to give.  *Id.* at 8.  Finally, Millner argues the deposition is premature given the Kinzer Action's progression order, which only provides deadlines related to class action discovery.  *Id.*

The plaintiffs contend the benefit of Millner's testimony to the potential class outweigh his burden of appearing for the deposition.  **See** Filing No. 17 - Response p. 2.  First, the plaintiffs argue Millner is the individual with the most knowledge concerning complaints of the Model 700 and Remington's response to those complaints.  *Id.*  The plaintiffs assert Millner's previous deposition is evidence of Millner's unique and intimate knowledge of relevant facts.  *Id.* at 3.  However, Millner's earlier deposition did not address the Kinzer Action's theories of recovery or the same product at issue.  *Id.*  Moreover, the plaintiffs contend there is no other person who would be available to testify about the issues because Remington's chief engineer suffered a devastating illness in 2009.  *Id.*  Second, the plaintiffs argue the new testimony would not be duplicative because it relates to different claims for relief.  *Id.* at 4.  The plaintiffs assert the new deposition is needed to address issues related to express and implied warranties, warranty claims, and warranty returns, which were not covered earlier.  *Id.* at 4-5.  The plaintiffs describe differences between the Williams Action and the Kinzer Action, including that the Williams Action involved a stand-alone product liability case for injuries suffered by an individual as a result of a defect in the Model 710 rifle.  *Id.* at 5.  Finally, the plaintiffs argue Millner's testimony

is relevant to the plaintiffs' anticipated motion for class certification, rather than merely general discovery on the merits. *Id.* at 7. The plaintiffs suggest limitations may be imposed on the deposition to minimize the burden on Millner. *Id.* at 5-6. However, the plaintiffs do not suggest any specific limitations to address the concerns raised by Millner.

The court finds, based on balancing the parties' competing interests in this matter, the plaintiffs may depose Millner. Millner failed to show he will suffer undue burden in terms of unusual expense, disruption, or inconvenience. Thus, Millner failed to meet his burden of showing that appearing for the requested deposition would be unduly prejudicial. The plaintiffs plan to take the deposition near Millner's regular place of employment. Although, Millner may travel for his employment, Millner and the parties may schedule the deposition around such travel. The plaintiffs show how the deposition testimony is relevant and necessary due to the difference between the Williams Action and the Kinzer Action. Further, there appears no other more convenient or less burdensome means exists to obtain the testimony, which was not covered in the Williams Action deposition. The likely importance of the discovery to the issues and action outweigh the burden to Millner. However, because Millner has been extensively deposed on many of the relevant issues, the Kinzer Action deposition will be limited in time to four hours. Furthermore, the deposition may be rescheduled at the convenience of the parties and the deponent to occur on or before May 31, 2011. Upon consideration,

**IT IS ORDERED:**

Thomas L. Millner's Motion to Quash Subpoena to Testify at a Deposition in a Civil Action (Filing No. 1) is denied. The deposition may be rescheduled at the convenience of the parties and the deponent to occur **on or before May 31, 2011**, for a limited duration **not to exceed four hours**.

DATED this 3rd day of May, 2011.

BY THE COURT:
s/ Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.